IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| South Carolina Tel-Con, Inc., | ) |
| | ) C.A. No. 6:11-3493-HMH |
| Plaintiff, | ) |
| | ) |
| vs. | ) **OPINION & ORDER** |
| | ) |
| World Tower Company, Inc. and Syed Mohammad N. Akhter, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on Defendant World Tower Company, Inc.'s ("World Tower") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court held a hearing on Defendant's motion on July 10, 2012, and for the reasons provided below, the motion is denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

South Carolina Tel-Con, Inc. ("Carolina Tel-Con") is a South Carolina corporation that constructs telecommunication towers. (Am. Compl. ¶¶ 1, 6.) In early 2003, Piedmont Rural Telephone Communications ("PRTC") enlisted Carolina Tel-Con to erect five telecommunication towers in Laurens County, South Carolina. (Id. ¶ 9.) Carolina Tel-Con thereafter entered into a contract with World Tower, a Kentucky corporation, whereby World Tower agreed to design, professionally engineer, and provide equipment for the towers' construction for $285,445.00. (Id. ¶ 10.) The towers' component pieces were manufactured in World Tower's Kentucky facility and shipped to South Carolina between May 20 and June 19,

1

2003. (Def. Mem. Supp. Mot. Dismiss 2.) Carolina Tel-Con subsequently erected the five towers in accordance with engineering drawings provided by World Tower. (Am. Compl. ¶ 13.)

In 2011, Carolina Tel-Con learned that the towers' foundations were improperly designed and insufficient to support the towers. (Id. ¶ 15.) According to the complaint, World Tower relied upon a contractor who was not a professional engineer to design the towers and then obtained Defendant Syed Mohammad N. Akhter ("Akhter"), a professional engineer, to stamp the drawings. (Id. ¶ 11.) Carolina Tel-Con alleges that Akhter had no meaningful role in the design or engineering of the towers and that World Tower instead relied upon an unqualified employee to design the towers so that it could enjoy a larger profit. (Id. ¶ 34.)

Carolina Tel-Con notified World Tower and Akhter of the towers' failing foundations, but alleges that neither party would participate in the redesign of the towers. (Id. ¶ 18.) It commenced this civil action against World Tower in state court on November 17, 2011. World Tower subsequently removed this case to federal court, and Carolina Tel-Con amended its complaint to name Akhter as a defendant. Carolina Tel-Con raises the following claims for relief in its amended complaint: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of implied warranties (collectively referred to as "contractual claims"); violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); and professional negligence. World Tower moved to dismiss the claims in their entirety. During the hearing on World Tower's motion to dismiss, the court denied the motion with respect to Carolina Tel-Con's SCUTPA and professional negligence claims, and it took the remaining contractual claims under advisement. After review and with the benefit of oral argument, the court denies World Tower's motion to dismiss Carolina Tel-Con's contractual claims.

## II. Discussion of the Law

### A. Standard of Review

Although World Tower captioned its motion as a motion to dismiss under Rule 12(b)(6), both parties relied upon and submitted numerous exhibits with their memoranda. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Consistent with this directive, the court reviews World Tower's motion under the strictures of Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

## B. Carolina Tel-Con's Contractual Claims

World Tower contends that Carolina Tel-Con's contractual claims should be dismissed because they are time-barred under Kentucky's four-year limitations period for claims involving contracts for the sale of goods. That limitations period provides, in pertinent part, as follows:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Ky. Rev. Stat. § 355.2-725. The parties initially dispute whether Kentucky's limitations period operates as a statute of limitations or rather a statute of repose. A statute of repose confers upon a party a substantive right to be shielded from liability after a legislatively-determined period of time. First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866 (4th Cir. 1989). A statute of limitations, however, is a "procedural device that operates as a defense to limit the remedy available from an existing cause of action." Id. at 865. Consequently, "[t]he distinction between statutes of limitations and statutes of repose corresponds to the distinction between procedural and substantive laws." Goad v. Celotex Corp., 831 F.2d 508, 511 (4th Cir. 1987).

Carolina Tel-Con construes the above limitations period as a procedural statute of limitations and maintains that it is inapplicable to its claims because under South Carolina choice of law principles, procedural rules are determined by the law of the forum state. Stern v.

4

Shelley, 781 F. Supp. 2d 281, 284 (D.S.C. 2011). World Tower counters that § 355.2-275 is not a statute of limitations but rather a substantive statute of repose. However, even if Kentucky's limitation period operates as a statute of repose, it is applicable here only if the parties' contract is governed by the substantive law of Kentucky. Because the court concludes South Carolina substantive law applies, the court need not resolve whether § 355.2-275 operates as a statute of limitations or a statute of repose.

A federal court sitting in diversity must apply the choice of law rules of the forum state. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). The parties agree that the applicable choice of law provision is found in the South Carolina Uniform Commercial Code, which provides that when there is no agreement specifying the choice of law, then South Carolina law applies "to transactions bearing an appropriate relationship to this State." S.C. Code Ann. § 36-1-105(1). The Fourth Circuit has adopted the "most significant relationship" test to determine whether a transaction has an appropriate relationship to South Carolina. In re Merrit Dredging Co., Inc., 839 F.2d 203, 206 (4th Cir. 1988). Under this approach, "the law of the state with the 'most significant relationship' to the matter at issue is applied," taking into consideration such factors as the needs of the interstate system, the relevant policies of the forum, the expectations of the parties, and certainty, predictability, and uniformity of result. Id. at 206-07. The Restatement further directs courts to consider such factors as the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties. Restatement (Second) of Conflicts § 188(2) (1971).

Application of these non-exclusive factors compels the conclusion that South Carolina has the most significant relationship to the parties' agreement. First, Carolina Tel-Con executed the agreement with World Tower in South Carolina, where it is incorporated and maintains its principal place of business. Second, each of the contractual claims centers upon the alleged improper design and engineering of the towers. World Tower was required under the contract to provide Carolina Tel-Con with engineering drawings that were tailored to the specific locations in South Carolina where the towers were to be erected, and were based upon soil reports generated from those sites. (Def. Mem. Supp. Mot. Dismiss Ex. 1 (Walker Aff. at 4).) Each of the parties understood that the engineering drawings would be stamped by a professional engineer licensed in South Carolina. Third, although the towers' component parts were manufactured in World Tower's Kentucky facility, they immediately were shipped to South Carolina, where they were installed and remained until the design problems were discovered. (Id. at 4-5; Am. Compl. ¶ 13.) As the Fourth Circuit previously has instructed, "when it is understood that the chattel will be kept only temporarily in the state where it is located at the time of the conveyance it is more likely that some other state will have the most significant relationship to the parties, the chattel and the conveyance and be the state of the applicable law." In re Merritt, 839 F.2d at 208 (internal alterations omitted). Finally, World Tower knew that the engineering drawings had significant contacts in South Carolina and that the component parts of the towers would be utilized there immediately after being delivered to Carolina Tel-Con. South Carolina was the logical forum for Carolina Tel-Con to file a lawsuit alleging improper design of the towers, and it was therefore entirely foreseeable that the substantive law of South Carolina would apply to the parties' agreement.

Notwithstanding South Carolina's substantial contacts with the goods at issue, World Tower argues that Kentucky maintains the most significant relationship to the parties' contract because the goods at issue were purchased in Kentucky and consequently any implied warranty attached there. In support of this position, it relies upon Thornton v. Cessna Aircraft Co., 886 F.2d 85 (4th Cir. 1989). There, the plaintiff, who served as the executrix of the estate of her deceased husband, sued Cessna following the death of her husband in an airplane crash that occurred in Tennessee, claiming Cessna breached implied warranties. Id. at 87. Cessna contended that Tennessee's statute of repose foreclosed the plaintiff's action. Id. at 89. The Fourth Circuit found Tennessee's statute of repose inapplicable and concluded that South Carolina maintained the most significant relationship to the subject matter at issue, explaining that the plaintiff resided in South Carolina, "purchased the airplane in South Carolina," "acquired the protections of the warranty in South Carolina," and "permanently stored and maintained the airplane in South Carolina." Id. at 90. Relying on Thornton, World Tower maintains that because Carolina Tel-Con purchased the goods in Kentucky, the substantive law of Kentucky should apply.

World Tower's argument is unpersuasive. First, In re Merritt plainly illustrates that the state in which a good is located at the time of conveyance is not necessarily the state with the most significant relationship to the subject matter of the contract. 839 F.2d at 207-08; see also Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1033-34 (D.S.C. 1993) (holding that South Carolina maintained the most significant relationship to the subject matter at issue notwithstanding the fact that the good was purchased in another state and shipped to South Carolina). Second, World Tower places too much weight on the single fact that in Thornton the

plane was purchased in South Carolina. The court noted numerous other contacts that South Carolina maintained with the subject matter of the contract, and given that Tennessee's sole connection with the plane was the location of the crash, the court determined that South Carolina had the most significant relationship with the plane. Although the goods at issue here were purchased in Kentucky, they immediately were delivered to South Carolina where they remained until the design flaws were discovered. The parties' knowledge that the goods would permanently remain in South Carolina counsels strongly in favor of applying South Carolina law.

World Tower finally argues that Kentucky's limitations period for claims involving the sale of goods, unlike South Carolina's, is identical to the Uniform Commercial Code promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Law, and therefore application of Kentucky law would promote predictability and uniformity among the interstate commerce system. Significantly, however, World Tower has provided no data showing how many states have adopted this provision in their code or otherwise demonstrated how application of South Carolina substantive law would impede interstate commercial activity. Furthermore, to the extent this single factor weighs in World Tower's favor, it does not override the numerous other facts that show that South Carolina maintains the most significant relationship to the goods at issue.

Because South Carolina maintains the most significant relationship to the parties' contract, the court concludes that the substantive law of South Carolina applies to Carolina Tel-Con's contractual claims. It follows, therefore, that Kentucky's four-year limitations period is

inapplicable to Carolina Tel-Con's claims. Based on the foregoing, World Tower's motion for summary judgment on Carolina Tel-Con's contractual claims is denied.

It is therefore

**ORDERED** that World Tower's motion, docket number 58, is denied. It is further

**ORDERED** that World Tower's motion to stay, docket number 59, is denied as moot.

**IT IS SO ORDERED.**

    s/Henry M. Herlong, Jr.
    Senior United States District Judge

Greenville, South Carolina
July 17, 2012